**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-02255-RM

ROBERT C. BROWN, JR.,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

## ORDER
---

This matter is before the Court on Robert C. Brown, Jr.'s ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No.1.) Plaintiff challenges the final decision of Defendant, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

Defendant provided the Court with the administrative record. (ECF Nos. 11; 11-1; 11-2; 11-3; 11-4; 11-5; 11-6; 11-7; 11-8; 11-9; 11-10; 11-11; 11-12; 11-13; 11-14; 11-15; 11-16; 11-17; 11-18.) The matter is fully briefed and ripe for adjudication. (ECF Nos. 15; 18; 19.)

For the reasons set forth below, the Court vacates the denial of Plaintiff's applications and remands for proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff applied for DIB and SSI in July 2009, alleging he was disabled as of May 30, 2008, due to the following conditions that limit his ability to work: mental issues as well as problems with his left wrist, right shoulder, and back. (Admin. R. ("Tr.") 197-203, 231.) After Plaintiff's applications were denied by an ALJ in 2011. (Tr. 82-96.) Plaintiff requested review of the ALJ's decision (Tr. 157-59, 258-59), which Defendant's Appeals Council granted and remanded the matter to the ALJ. (Tr. 101-04.) The ALJ held a new hearing in February 2013. (Tr. 51-67.) On March 7, 2013, the ALJ issued another unfavorable decision. (Tr. 12-28.) Plaintiff again requested review of the ALJ's decision (Tr. 8-11, 260-62), which the Appeals Council denied (Tr. 1-6), making the ALJ's March 2013 decision Defendant's final decision for purposes of judicial review, *see* 20 C.F.R. §§ 404.981, 422.210(a). Plaintiff timely requested judicial review before the Court.

### A.   Background and Relevant Medical Evidence[1]

Plaintiff was born in 1962. (Tr. 197.) Plaintiff completed high school. (Tr. 236) Plaintiff's past relevant work history, as referenced in the Dictionary of Occupational Titles, includes: boilermaker and welder fabricator. (Tr. 60-61.)

In June 2008, Tanya Hrabal, M.D., assessed Plaintiff as suffering from bipolar depression, substance abuse, and obesity. (Tr. 275-76.) Dr. Hrabal prescribed Geodon. (Tr. 275-76, 561.)

In September 2008, Plaintiff was hospitalized after multiple visits to the emergency room with headaches. (Tr. 336.) On September 5, 2008, Maureen Kelly, M.D., discharged Plaintiff. (Tr. 336.) Dr. Kelly diagnosed Plaintiff with low back pain and indicated that an MRI of Plaintiff's lower back showed a broad-based disc bulge with small disc herniation. (Tr. 336.)

---

[1] The Court will not discuss impairments or conditions that are not at issue in Plaintiff's opening brief.

Dr. Kelly also noted that Plaintiff had psychiatric issues and that Plaintiff was previously prescribed Geodon but could not afford it. (Tr. 336.)

In October 2008, Susan Halsey, PA-C, diagnosed Plaintiff with insomnia, depression, hyperlipidemia, hepatitis C, and polysubstance abuse. (Tr. 271-72.)

In December 2008, Jesse Steffl, PA, diagnosed Plaintiff with anxiety, depression, and problems with anger. (Tr. 269-70.) Mr. Steffl prescribed Plaintiff Lexapro and Ativan and referred Plaintiff for mental-health treatment. (Tr. 269-70.)

In February 2009, Steven Martin, M.D., examined Plaintiff. (Tr. 646-49.) Dr. Martin noted that Plaintiff was dressed in clean jeans, was oriented, and had intact long-term memory. (Tr. 647-48.) Dr. Martin noted Plaintiff maintained no eye contact, picked at his fingers, frequently answered questions with an irritated "I don't know, I can't remember, [and] that didn't happen," and did not provide much insight into and blamed others for his difficulties. (Tr. 647.) Dr. Martin assessed that Plaintiff had an irritable affect, depressed mood, and poverty of ideation. (Tr. 647.) Dr. Martin stated Plaintiff was depressed and would be a risk to have in the workplace due to extreme irritability and the potential to be physically aggressive. (Tr. 648.) Dr. Martin opined that Plaintiff's ability

> to understand and remember detailed instructions is markedly limited because of his poor concentration, and his limited understanding of his need to stay focused. His ability to sustain concentration and persistence, carry out short instructions, simple work-related decisions is not limited, but to carry out detailed instructions, maintain attention and concentration, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine, or work in coordination with others is all markedly limited. . . . His ability to maintain a normal workday, workweek because of all of his physical and mental disabilities is markedly limited. Social interactions, again is markedly limited.

(Tr. 648-49.)

In February 2009, James Dyde, M.D., a state-agency non-examining physician, reviewed the evidence and stated Plaintiff retained the mental ability to do work not involving significant complexity or judgment and requiring up to three months to learn techniques, acquire information, and develop the faculty needed for average job performance.  (Tr. 650-67, 652.)  Dr. Dyde stated Plaintiff could not work closely with supervisors or co-workers and could accept supervision and relate to co-workers so long as it was not frequent or prolonged.  (Tr. 652.)

In June 2009, Jose Vega, Ph.D., completed a form in connection with Plaintiff's application for state-financial assistance (Med-9 form), in which he stated that Plaintiff had been or would be unable to work at any job due to shoulder, wrist, and breathing problems, as well as major depression with psychotic features.  (Tr. 369.)

In August 2009, Donald Luebke, M.D., identified that an x-ray confirmed Plaintiff had chip in a bone in his left middle finger.  (Tr. 300.)  An MRI in the same month showed Plaintiff had a bone infection in his left hand but that the fracture was healing.  (Tr. 352.)

In August 2009, Plaintiff reported to Dr. Vega that he had problems with anger, hearing voices, paranoia, poor sleep, confusion, and self-isolation.  (Tr. 278.)  Dr. Vega found Plaintiff was oriented but had blunted affect and depressed mood, and diagnosed major depression with psychotic features.  (Tr. 279.)

In March 2011, Dr. Vega examined Plaintiff.  (Tr. 380-84.)  Dr. Vega noted Plaintiff presented with significant psychiatric problems.  (Tr. 383.)  Dr. Vega noted that Plaintiff had been referred for medication in the past and had seemed to have responded.  (Tr. 383.)  Dr. Vega noted that due to Plaintiff's lack of financial resources he could not afford medication.  (Tr. 383.)  Dr. Vega found Plaintiff had some deficits in sustained attention and concentration, poor social interaction, and opined Plaintiff would have difficulty taking direction from others.  (Tr. 383.)

4

Dr. Vega also noted Plaintiff was impaired in adapting to situations and reported some psychotic symptoms in the form of auditory and visual hallucinations, as well as paranoia. (Tr. 383.) Dr. Vega diagnosed Plaintiff with major depression, recurrent, and moderate to severe levels with psychotic features. (Tr. 383.) Dr. Vega opined that Plaintiff's condition prevented him from meeting the demands of competitive employment. (Tr. 384.) On the same date as Dr. Vega examined Plaintiff, Dr. Vega completed a residual functional capacity (mental) in which he assessed Plaintiff suffered from marked or extreme limitations in a number of faculties. (Tr. 385-86.)

In June 2012, Carlos Rodriguez, Ph.D., completed a Med-9 form. (Tr. 782.)

In August 2012, Iana Shamah, PA-C, diagnosed Plaintiff with insomnia, agitation, anxiety, and depression and prescribed Klonopin and Abilify. (Tr. 864.)

In September 2012, Grazyna Tycner, M.D., examined Plaintiff. (Tr. 879-81.) Dr. Tycner found Plaintiff to be depressed with an irritable mood (described as), anxious affect, and questionable insight and judgment. (Tr. 879.) Dr. Tycner diagnosed Plaintiff with mood disorder and cannabis abuse. (Tr. 880.)

In December 2012, Velma Campbell, M.D., examined Plaintiff at the request of his attorney. (Tr. 890-93.) Plaintiff stated "that the physical conditions did not interfere with his work very much, with absenteeism less than once a month, it was really the mental health conditions that got in his way." (Tr. 890.) Dr. Campbell found Plaintiff was appropriately dressed, mildly restless, and was interactive and well-oriented and had a pleasant affect. (Tr. 892.) Dr. Campbell found that Plaintiff had a full range of motion in his neck. (Tr. 892.) Dr. Campbell found that Plaintiff had intact sensation in his arms without joint deformities. (Tr. 892.) Dr. Campbell found Plaintiff had normal grip strength in his right hand and slightly

decreased grip strength in his left hand. (Tr. 892.) Dr. Campbell found Plaintiff had a full range of motion in his shoulders, elbows, and wrists. (Tr. 892.) Dr. Campbell diagnosed Plaintiff with Dupuytren contracture of the hands; left hand wrist injuries with residuals of decreased grip strength and altered sensation; cramping myalgia in his arms and legs; plantar fasciitis; migraine headache syndrome; history of left hip injury; and psychological disorders including bipolar disorder, depression, anxiety, and insomnia. (Tr. 892.) Dr. Campbell opined Plaintiff had no specific limitations on standing, walking, and sitting, or in postural activities such as bending and stooping, squatting, and kneeling. (Tr. 893.) Dr. Campbell opined Plaintiff was limited to lifting 40 pounds for up to two hours per day and 20 pounds up to four hours per day. (Tr. 893.) Dr. Campbell opined Plaintiff was limited to forceful gripping and twisting with the hands to two hours per day and would have difficulty with objects or tasks that placed direct pressure on the palms of his hands, such as carrying heavy buckets with thin handles. (Tr. 893.) Repetitive motion with the hands such as squeezing handles or triggers, especially with the ring fingers, was limited to fewer than two hours per day. (Tr. 893.) Dr. Campbell opined that Plaintiff could only frequently handle and occasionally finger. (Tr. 895.)

### B.     The ALJ's Decision

On March 7, 2013, ALJ William Musseman issued his decision in this matter denying Plaintiff DIB and SSI. (Tr. 12-28.) In reaching his decision, ALJ Musseman followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 17-28.) ALJ Musseman found that Plaintiff has met the disability insured status of the Act through December 31, 2012 and has not engaged in substantial gainful activity since May 30, 2008, the alleged onset date. (Tr. 18.) ALJ Musseman found that Plaintiff has the following severe impairments: "obesity, disorder of [the] back, and affective disorder." (Tr. 18-23.) ALJ Musseman found that Plaintiff

6

does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listings 1.00, 9.00, 12.00, and 12.04.  (Tr. 23-24.)  ALJ Musseman found Plaintiff's residual functional capacity ("RFC") to be as follows: "to perform light work as defined in 20 CFR 404.1567(b) and 41.6967(b) except frequent handling; occasional fingering, gripping and grasping with the non-dominant left upper extremity; minimal supervision; occasional dealing with the general public or coworkers; and no complex tasks (SVP 2 or less)."  (Tr. 24-27.)  ALJ Musseman found that Plaintiff has past relevant work and the he is unable to perform such work. (Tr. 27.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Musseman's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Musseman further found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including:  coin machine collector, car dealership account investigator, and retail marker.  (Tr. 27-28.)

Therefore, ALJ Musseman concluded that Plaintiff was not disabled.  (Tr. 28.)

**C.     Procedural History**

Plaintiff appealed the ALJ's decision at issue in this matter.  (Tr. 7-11.)  On July 2, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6.)  Plaintiff appeals that decision by bringing this lawsuit.  (ECF No. 1.)

## II. LEGAL STANDARDS[2]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and

---

[2] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B. Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act. 42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability. *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends.

*Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

**III. ANALYSIS**

Plaintiff raises numerous issues[3] for the Court's consideration, including that: (1) the ALJ erred in rejecting Dr. Martin's opinion (ECF No. 15 at 23-27); (2) the ALJ erred in rejecting one

---

[3] In his reply brief, Plaintiff raises, for the first time, the issue regarding the ALJ's failure to discuss and state the weight afforded to Dr. Dyde's opinion (*see generally* Tr. 15-28). (ECF No. 19 at 7.) Although this would be an independent basis on which to vacate Defendant's decision, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th

10

of Dr. Vega's opinions and the reasons articulated by the AJL for rejecting that particular opinion are not supported by substantial evidence (ECF No. 15 at 28-36); and (3) the ALJ's RFC determination is not supported by substantial evidence (ECF No. 15 at 36-39).

Because the Court finds the ALJ committed legal error due to his failure to discuss adequately one of Dr. Vega's medical opinions and substantial evidence does not support the reason for affording that particular opinion no weight, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, a court properly declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend, by the opinion, to suggest the result that should be reached on remand; rather, the Court encourages the parties (as well as the ALJ) to consider all of the evidence and the issues anew.

    **A.**    **The ALJ Erred by Failing to Discuss Adequately One of Dr. Vega's Opinions and Substantial Evidence Does Not Support the ALJ's Reason for Affording that Particular Opinion No Weight.**

Plaintiff argues the ALJ's rejection of Dr. Vega's March 2011 opinion (Tr. 380-86) lacks substantial evidence and the ALJ committed legal error in failing to discuss adequately the reason for assigning "no significant weight" to that opinion (Tr. 20). (ECF No. 15 at 28-36.)

---

Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)), because Plaintiff did not raise the issue in his opening brief, such issue is waived, *see Wall*, 561 F.3d at 1066-67.

Defendant counters that the ALJ committed no legal error and substantial evidence supports the ALJ's decision. (ECF No. 18 at 16-19). The Court finds merit to Plaintiff's argument.

The ALJ is required to weigh every relevant medical opinion he or she receives. *See* 20 C.F.R. §§ 404.1527(c)-(d); *Watkins*, 350 F.3d at 1301 (citation omitted); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain why a medical opinion was not adopted). "It is the ALJ's duty to give consideration to all the medical opinions in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)); *see also Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009) (unpublished) (holding that "an ALJ must consider the opinion of every medical source and provide specific, legitimate reasons for rejecting it"); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). The ALJ "must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii)). "[W]hen deciding what weight to assign to an opinion, an ALJ must consider the factors set forth at 20 C.F.R. []§ 404.1527(d). . . ." *Lauxman*, 321 F. App'x at 769; *see also Wade v. Astrue*, 268 F. App'x. 704, 706 (10th Cir. Jan. 23, 2008) (unpublished). "The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Medical opinions are defined as "'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant]

can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) (citing 20 C.F.R. § 404.1527(a)(2)). Medical opinions may not be ignored and all medical opinions must be evaluated by an ALJ in accordance with factors contained in the regulations. *Id*. (citing 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2-3 (July 2, 1996)). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1301 (citation omitted); 20 C.F.R. §§ 404.1527(d)(2-6). As to non-treating physicians, the ALJ is still required to consider their opinions and to provide specific, legitimate reasons for rejecting it. *Doyal*, 331 F.3d at 764; SSR 96-5p, 1996 WL 374183, at *1. Although the ALJ need not discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2008), he "must be 'sufficiently specific' to permit meaningful" review. *Guilano v. Colvin*, 577 F. App'x 859, 861-62 (10th Cir. 2014) (unpublished) (citation omitted). An ALJ may not reject certain medical opinions on the presumption that those providers were paid for the report or obtained at the request of a claimant's attorney. *See Crowder v. Colvin*, 561 F. App'x, 740, 743 (10th Cir. 2014) (unpublished) (citation omitted).

> With respect to Dr. Vega's March 2011 opinion, the ALJ stated the following:
>
> In March 2011, at the request of his attorney, the [Plaintiff] again presented to Dr. Vega for assistance with his disability claim. Again, *based solely on the statements made by the [Plaintiff]* (which are questionable, at best), Dr. Vega diagnosed major depression, recurrent, moderate to severe with psychotic

13

> features. Dr. Vega also completed a mental functional capacity form given [sic] the [Plaintiff] numerous marked and extreme limitations *without any supporting findings* (Exhibit 9F). No significant weight is given to the *unsupported opinion* of Dr. Vega that is *inconsistent with the records as a whole*.

(Tr. 20 (emphasis added).)

First, substantial evidence does not support the ALJ's conclusion that Dr. Vega's opinion was "based solely on the statements made by the [Plaintiff]." Specifically, Dr. Vega completed a mental status examination in which he noted that Plaintiff's "[a]ffect was clearly blunted, with a depressed and anxious mood." (Tr. 382.) Further, Dr. Vega's "*observation* of [Plaintiff's] behaviors was one where [Plaintiff] was quite irritable and anxious." (Tr. 382 (emphasis added).) Further, Dr. Vega noted Plaintiff's "[a]ppearance was one where he was unshaven and somewhat disheveled." (Tr. 382.) And, Dr. Vega noted that Plaintiff "would take long pauses between responses, as it would be indicative of his difficulty in concentrating and attending to the task." (Tr. 382.) Therefore, substantial evidence does not support the ALJ's conclusion that Dr. Vega's March 2011 opinion was based *solely* on the statements made by Plaintiff. *See Grogan*, 399 F.3d at 1261-62. Defendant argues that the ALJ permissibly discounted Dr. Vega's March 2011 opinion because it was based on Plaintiff's subjective complaints. (ECF No. 18 at 16, 18.) While often Defendant's argument would carry weight, it is to be noted that the "practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished). Rather, as in this matter, a psychological opinion "may rest *on observed signs and symptoms* or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citation omitted and emphasis added).

Second, substantial evidence does not support the ALJ's conclusion that Dr. Vega's mental functional capacity opinion (Tr. 385-86) is "unsupported". A narrative report (Tr. 380-

84) accompanied the mental functional capacity opinion (Tr. 385-86). Specifically, Dr. Vega's residual functional capacity evaluation in its "diagnosis and rating of severity of the mental functioning" was based upon his "clinical exam findings." (Tr. 386.) The ALJ was required to consider Dr. Vega's narrative report in connection with his mental functional capacity opinion. *Cf. Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence"); *cf. Taylor v. Astrue*, Case No. 10-CV-01891-PAB, 2011 WL 3236099, *3 (D. Colo. July 28, 2011) (finding that the a doctor's box-checking opinion accompanied by a narrative report is substantial evidence). The ALJ's opinion does not make clear that he did so. (*See generally* Tr. 20.)

Third, the Court is unable to determine whether substantial evidence supports the ALJ's conclusion that Dr. Vega's March 2011 opinion is "inconsistent with the records as a whole." The ALJ's failure to specifically highlight those portions of the record with which Dr. Vega's March 2011 opinion is allegedly inconsistent prevents the Court from determining whether substantial evidence supports the ALJ's conclusion that Dr. Vega's March 2011 opinion is entitled to no weight. *See Crawford v. Colvin*, 560 F. App'x 729, 732 (10th Cir. 2014) (unpublished) (holding that the court could not determine whether substantial evidence supported an ALJ's decision not give controlling weight to a physician's opinion when the ALJ failed to identify those inconsistences with any clarity and rather referred to an earlier discussion in his decision which mostly recounted that physician's treatment records); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004); *see also Cira v. Colvin*, 67 F. Supp. 3d 1206, 1209-10 (D. Colo. 2014) (holding that the Court "is neither required—nor, indeed, empowered— to parse through the record to find specific support for the ALJ's decision. Such generalized,

global references to the record make the ALJ's opinion nearly impossible to review, and certainly do not constitute substantial evidence in support of the Commissioner's disability determination"). Further, although the ALJ did not give "any great weight" to Dr. Martin's conclusions (Tr. 19), the ALJ did not specifically disavow all of Dr. Martin's opinions or findings (*see generally* Tr. 19). A review of Dr. Martin's conclusions shows that they could be consistent with that of Dr. Vega's March 2011 opinion. (*Compare* Tr. 648-49 *with* Tr. 385-86 (Dr. Martin opined Plaintiff is markedly impaired in understanding and remembering detailed instructions to which Dr. Vega opined Plaintiff is moderately to markedly impaired); (Dr. Martin opined Plaintiff is markedly impaired in maintaining attention and concentration to which Dr. Vega opined Plaintiff is markedly to extremely impaired); (Dr. Martin opined Plaintiff is markedly impaired in performing activities within a schedule, maintaining regular attendance, and sustaining an ordinary routine to which Dr. Vega opined Plaintiff is markedly to extremely impaired); (Dr. Martin opined Plaintiff is markedly impaired in his ability to work in coordination with others to which Dr. Vega opined Plaintiff is markedly to extremely impaired); (Dr. Martin opined Plaintiff is markedly impaired in the ability to maintain a normal workday or workweek to which Dr. Vega opined Plaintiff is markedly to extremely limited); (Dr. Martin opined Plaintiff is markedly impaired in social interactions to which Dr. Vega opined Plaintiff is markedly to extremely impaired). The ALJ's opinion is not one in which it is clear that the ALJ's recitation of the medical records (Tr. 18-23) is sufficiently clear that the Court can discern the basis upon which the ALJ found Dr. Vega's March 2011 opinion to be inconsistent with the record as a whole.

IV.     CONCLUSION

Based on the foregoing, the Court:

(1)     VACATES Defendant's denial of disability insurance benefits and supplemental security income; and

(2)     REMANDS[4] to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 14th day of March, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[4] The Court notes that Plaintiff applied for DIB and SSI in 2009. (Tr. 197-203.) Although the Court acknowledges that Plaintiff's applications are quite old, Plaintiff presents the Court with no argument, in contrast with a conclusory request, as to why an award of benefits is warranted in this matter as opposed to a remand for further consideration. (*See generally* ECF Nos. 15, 19.) Therefore, the Court declines to award benefits as that argument is waived because it was raised in a perfunctory manner. *See Wall*, 561 F.3d at 1066-67.